0, Maverick Tube Corporation v. United States 0, Maverick Tube Corporation v. United States 30 January 2016 Good morning your Honors, may it please the Court. I am David Simon. I'm appearing on behalf of Chiarova Boru and I may also refer to their affiliated exporter Eugel Boru. This is an appeal from a dumping investigation and the key issue concerns the duty drawback adjustment to U.S. price. The question here is whether the Commerce Department can add to its historical criteria for duty drawback adjustments the requirement that a respondent prove that it imported raw material actually suitable for use in the production of the products exported to the United States. We say that Commerce cannot add that criteria. So what criteria would you have us use? I mean if the government, the foreign government says it's equivalent, is that the test? Commerce has always had this two-part criterion. Is there a sufficient link? And that's an issue that concerns an analysis of the Turkish or foreign country law regarding duty drawback. And in the Turkish system there is this concept of equivalent that governs these things. The Eugel has to show, for example, it will import 200,000 tons of hot-rolled coil in a couple of different tariff categories according to the thicknesses of the coil and it will export 190,000 tons of steel pipe. And all of the coil inside the import allowance is equivalent goods because it's in the same eight-digit tariff category. I appreciate that. That's helpful. My question is, is that what you want us to say? That if the country, if the foreign country concludes that they're equivalent goods, then they're included in this calculation? Or can every country come up with whatever criteria they want to establish who's going to get the rebate and whether that rebate should be included? Commerce analyzes the law of the foreign country and sees how it works. Okay. So conceivably under the construct of the statute you're proposing, we could have a different regime in every foreign country in the world, right? And we don't have any say as to whether or not to test the concept of equivalency or whatever other concept another country would come up with that would put them in this basket that we're willing to include, right? Well, in this case, commerce knows that the equivalency is the eight-digit tariff classification. So UGEL, which is a steel pipe maker, couldn't import chocolate and get a drawback on that because chocolate's not an input to pipe. So commerce checks that. They look at that. They look at the drawback certificates and they see coil, pipe. And because they always see that as a pattern, they say the system works. The system's not giving drawback on something that's not capable of being used on the exported product. Of course, the statute doesn't say capable of being used. That's right. The statute says any import duties imposed by the country of exportation. But the case law goes, and this goes way back to the 80s, authorizes, accepts commerce's ability, need to analyze whether the foreign system is working in a way that the state that substitution materials are appropriate for customs purposes and for dumping purposes. And they have found time, and again, there's lots of these Turkish cases, and they found in the original Taiwan cases, in the FEMCO cases, for instance, that the foreign systems did have an appropriate structure for linking imports and exports, and that the eight-digit HTS structure is an adequate structure. And if I'm not mistaken, the United States works in the same way. It's in our agency briefing, but it's not – hasn't been an issue here. So the Turkish system works on a certificate basis. A company like Ujo will apply to import 100,000 tons of coils, export 95,000 tons of pipes. Electronically, the Turkish customs computer system looks at these, looks at this application, and says, okay, granted. And then each time Ujo imports coils, it counts them against – actually, Turkish customs counts those coils against that inward processing certificate. Each time Ujo exports pipes, Turkish customs counts them against that inward processing certificate. So it's always happening in a balanced way, and commerce knows this perfectly well. The question is, this suitability for use criterion that commerce is now talking about, it would be okay by me, by Ujo, if it incorporated the concept of equivalent goods. But it doesn't. Well, the question is, though, if you're willing to kind of slice and dice whatever criteria is used, we start with the statute. So you think the statute is ambiguous? I do not think the statute is ambiguous. I thought you just said, well, they could do one thing and not the other thing, that you realize there were limitations that could be imposed based on what the foreign country – how it was doing its calculations, right? Commerce has always interpreted the statute in a sort of a – they have the authority to see if there's a bona fide system, if drawback exists as a system, as a bona fide system. If you look back at the FEMCO case in the 80s, what Judge Restani said there was that the substitution principle in the Taiwanese system that was at issue there was a pretty broad structure, but it was not so broad as to be meaningless. And commerce certainly has the authority to determine whether there is a drawback system in existence that defines things adequately to be deemed a drawback in the first place. That's not an ambiguity in the statute. It's how commerce gets to the definition of drawback. Because they say if the drawback system allowed you to import chocolate and get a drawback when you export steel pipe, then it's not any rebate by reason of the exportation because it's not a bona fide system. So we're looking at the last provision of the statute, the last section, which says has been rebated, which has not been collected by reason of the exportation of the subject merchandise to the United States. Yes, but the beginning portion is to me the key. Any import duties, the amount of any import duties rebated. So as long as the system is working systematically Isn't that modified by the section I just read, by reason of the exportation? I mean, it's all one sentence. There are a bunch of commas in between. But when it says shall be increased by the amount of any import duties imposed by the country of expiration, which have been rebated, et cetera, by reason of the exportation of the subject merchandise to the United States. But we don't really have an issue there because in UGEL's database of imports and exports under its inward processing certificates, you can see the line item of the OCTG that was exported to the United States. You can see that when that certificate was closed, all these imports were properly balanced against all these exports. And so the rebate was given by reason of the exportation inter alia of the goods to the United States. But it wasn't the exportation. What is meant by the subject merchandise? Yeah, we have that. That's never been an issue. We exported OCTG. That's not the issue before the court. The issue here is whether we imported a raw material suitable for use in the exported merchandise. And we certainly imported a lot of hot roll coil. The problem factually is we did not import the J55 grade or standard of coil that is suitable for use in OCTG. OCTG is a very sophisticated product. It operates under a lot of pressure and so forth. So you have to have a specific kind of coil. It's in the same eight-digit tariff category as all the coils. But it happens that for these couple of hundred tons out of hundreds of thousands of tons, these couple of hundred tons that we produced that were OCTG, we didn't import those coils. But they were that we could claim the OCTG as an export because of equivalent goods. All of the coils we imported are equivalent to each other and equivalent also to J55 coils on the import side. And what commerce does is they write... What is the policy argument for equivalency? Is it because like everything, it's all interchangeable? It's all, yeah. It's all fungible. So if you could just as easily, could you just as easily have used the stuff that was imported from China? Well, we didn't import from China, in fact, but we could have imported J55 coils. It just happens that in that period we didn't. But there's no reason that we couldn't have. The policy argument is that a coil weighs 20 tons and you're exporting hundreds of thousands of tons of pipe. And you're getting some from an import, some from domestic. And there's no way that customs, because customs is administering the system, there's no way that customs can link this imported coil to this exported pipe. In fact, there's no way that a manufacturer can do that either. I mean, it has always been thus since the 80s, when I started working on these drawback cases. You have to, you cannot run a drawback system without substitution drawback, as we call it in the United States. Doctrine of equivalence, as it's called in Turkey. Okay. Thank you. Good morning. May it please the court. The trial court's decision here should be affirmed. This case has nothing to do with the Turkish duty drawback system. Can I just ask you as background, is this a consistent policy that the government has followed or is there going to switch around to reach the conclusion it reached here? This is a very unique situation, what happened here. It's not, here again, it has nothing to do with the duty drawback system that's in Turkey. This case slowly, and I can, if I may explain, you have to step back a little bit here. The whole purpose of, when commerce does the dumping calculation, the whole purpose of the AD statute is to account for subject merchandise related items. So that when you're doing a proper comparison between normal value, which is in the exporting country, with the U.S. price in the U.S. No, I understand that. I'm just wondering, your friend proposes a substitution or equivalence kind of mantra over this. Has the commerce implemented consistent procedure all along, in terms of how it's interpreted and applied this to similar circumstances? Well, the statute, the duty drawback statutory provision here does not speak to the particular issue before the court here, which is whether the subject merchandise must be used. But in order to understand the provision and what it's meant to do here, the duty drawback provision is meant to account for and how this court actually held. I think the question is, I want to, I think this is an important question. The question is, has customs changed or commerce changed the way it's been implementing this statute and that previously drawbacks that were between goods that are simply related on the schedule, those were allowed, these substitutions or doctrine of equivalent substitutions, as your adversary is referring to, were they previously allowed and now they're not? No, commerce did not change that practice. Commerce actually did not reach that question here. They didn't reach the, basically commerce does a two-prong test when it evaluates the duty drawback provision. It never reached that because it found that as a threshold matter, the provision just doesn't apply in this situation, in the facts before it, in this case, because UCHEL did not, could not use that input, that the hot roll coils that it says, it couldn't use that input for the subject merchandise. And to use the analogy that counsel gave here, counsel said, just like chocolate could not be used as an input to make the subject merchandise, same as those coils that it imported could not be used to make subject merchandise. And has that been, just to go back again, has that been the position that commerce has consistently taken? It never came up before. This is the first case that such a factual situation came up. So it was very unique to this particular company. It never came up in a prior. You mean no one has requested it. It's never, it's been, it's never been, this provision has never been applied to goods that were not subject, however we say it, to the import and original importation. Correct. As a factual matter, this issue has not come up where the respondent, the exporting company that's asking for this adjustment, factually did not use that import in the subject merchandise. That situation has never come up. And this is essentially a chocolate case. Yes, it is. It's a chocolate case. Even though he chose something as far away from pipe and steel as conceivable, you're saying it's the same thing. It's the same thing. If it can't be, if it can't be used, it can't be used. So you, and there's no reason, the reason under the provision that you make the adjustment. Can't be used or wasn't used. Could not be used. Could not be used. Could not be used. So you think, can we look at the statute? Is it your position that that's mandated by the statute or that the statute is ambiguous and you get deference on your interpretation? The actual statutory provision for duty drawback doesn't speak one way or the other. But when you look at the intent of the statutory scheme. Well, why do you say it doesn't speak to it? Because it doesn't use a term used. I think it's inherent and it's a given that it doesn't make sense to give. Yes, but it talks about which have been, have been past tense rebated or which have not been past tense collected by reason of. That's causation. So you seem to be walking away from the statute. It's, you know, I think for us, I think the trial court actually found that this was, you know, it didn't speak to the question. But I think it can be viewed either way. It can be viewed as when you look at the statute, it simply does not, there is a requirement that it must be used in the subject merchandise. So it can, I think it can go either way. It can be, you can interpret the statute as that use is there. A use, it must be used in order for this adjustment to be made. And that's why as a threshold matter in this case, Congress simply found that the statutory provision didn't apply, so it didn't actually go further. Well, you get to prevail, I guess, arguably, if the statute is ambiguous because then you're entitled to deference. You don't need to establish that, nor did the CIT in order to reach the decision to be reached. Correct. But your friend says that the statutory provision, as I understand it, is unambiguous because it doesn't include any of those limitations. It says it's going to be increased by the amount that's been rebated. Here there's no dispute that there's been a rebate by the government, right, because of those original importations, and by reason of the exportation of the subject merchandise to the United States. Well, that's why the government has decided to rebate the amount that came in because they were doing it. Now, the government has made a determination, we're going to give you back this rebate whether or not the goods are identical or whether they're just a substitution or equivalence or whatever term they're using. But why isn't your friend right that that falls clearly within the statutory test? Because it would actually be to give the adjustment in this case would actually be contrary to the statutory scheme and what this provision is meant to do. That's why it would actually create an imbalance that this provision is meant to take care of. Well, you make me a little nervous when you talk about statutory schemes and what they're meant to do as opposed to looking at what the language says. So why don't we look at what the language says and what does that language tell us? Of any import duties, I think you do have to read it together, by reason of the exportation of the subject merchandise. So this import duty that the respondent is getting here is not by reason of the exportation of subject merchandise because it could not be used. Well, you say maybe under certain systems it could not be, but isn't it conceivable that a government, the government is the one that's imposing the tax in the first instance and then deciding what it's going to rebate. Well, maybe the government decides that we're going to rebate it not just for the expiration of the goods that it was used, but for equivalent. So why wouldn't the government's decision, that's the reason. That is the reason that the government is rebating it. It's just not using the same criteria that you would be using, right? But even if that is correct and the government is doing that, that's really not a dumping issue. That doesn't mean you make the adjustment under this provision. That's really, for lack of a better way of saying it, that's really an export subsidy. The government is saying, okay, you can get a rebate for any exporting any merchandise, and that's really an export subsidy that's going on in the country of export. It has nothing to do with dumping. It could not have been used. But I read, as I mentioned before, the statute talking about actual past tense, which have not been collected by reason of the exportation. Doesn't that help you more? That the duties have not been collected? That's right, have not been collected. Yeah, but I think counsel's argument, and that's why, for our argument, yes, the duties have not been collected for the input that's going into the subject merchandise. So, correct. Therefore, we think the trial court got it right here. Commerce's decision not to grant the duty drawback adjustment was in accordance with law and reasonable in this case. Can I just ask you a question? Sure. Are we agreeing that we've not decided this issue, we've not construed this statutory provision or applied it in past cases? This court has interpreted a different issue in Saha Thai, this court, but that was a totally different issue. So we have language, I understand. We have language that supports your argument, but that was dicta in that case? In that case, I think the language we cited, too, in that case, in Saha Thai, was when this court was describing what the duty drawback provision is meant to do and what it is. And in that description, this court said, you know, when the exporting country imposes inputs that are used in the subject merchandise, that's how this court described it. So, yes, I think it further supports Commerce's decision in this case. But it doesn't dictate the answer to the question. That's correct. The issue was not before the court in Saha Thai. That's correct. We just said it further supports our position in this case. Correct. So if there's no other questions, thank you, Your Honor. Hold on. Your colleague has reserved a few minutes. Good morning, Your Honors. Jonathan Cooper on behalf of U.S. Steel Corporation. May it please the Court. I think it's important to step back for just one second and understand exactly what it is that UCHEL is asking for here. It's arguing that this court should require the Department of Commerce to engage in a skewed price comparison because what's going on here is that in a normal anti-dumping proceeding, Commerce will evaluate whether a foreign good is being sold unfairly in the United States by looking at, on the one hand, the price in the United States and, on the other hand, the price of the good in the foreign country where it's made. What UCHEL is arguing for is to increase the U.S. price by the amount of the import duty of a material that is not and cannot be used to make the good that's been exported to the United States. And so that price is not reflected in the price of the good in the foreign market. So you're going to have a skewed price comparison. That's essentially flipping the statutory purpose on its head because the ordinary reason for a duty drawback is that when the good is produced in the foreign country using a material for which Why the country here? I mean, the predicate of this is that this country provides the rebate. And if it wasn't providing the rebate, we wouldn't be here. Right? Exactly. The country provides the rebate. That's right. But the reason why that matters is, and as my colleague from the Department of Justice said, that would effectively be an export subsidy. The reason why it comes into the anti-dumping context is that if the material for which there is the import duty is used to make the foreign good, then that import duty is built into the price of that good in the foreign country. But if the good is not used and indeed cannot be used to make that foreign good, then that import duty is not in the price of the foreign good. Right? And so that's why here there would be a skewed price comparison. Whereas in the ordinary situation where duty drawback arises, that's when the ingredient is used to make the foreign good, and so the import duty is built in the price of the foreign good, and then when you have the rebate and the product is exported to the United States, that import duty, because it's been rebated, has not been built in the price of the United States. So then you make the duty drawback adjustment to get a level playing field, a level comparison. Right? But here, because these ingredients are incapable of being used to make the foreign good, that import duty that the company is paying isn't built in the price. Is that the test you were to apply? We've got all kinds of tests floating around here. But if it's not capable of use, I thought your test would be if it's actually not used in the good, and that whether it's capable of being used is not a factor. But I'm not sure. I mean, what's the test here? So we have, on our appeal, supported Commerce's approach here. I agree with, I think, what Judge Loy was suggesting earlier, which is you could go even stronger. And as I think you were just discussing now, Chief Judge Prost, you could say, yes, the ingredient has to have been used in the foreign good that's exported to the United States. But that's not what Commerce did here, and that's not what we've argued on appeal. We think it's fine that the test Commerce has used, which is just capable of being used. Is Commerce using that test because it's hard to implement the other one? Do you know why they're using the capable one? You'd have to ask Commerce itself. But that's my impression, that essentially there's a tradeoff, right? Because if you wanted to make sure that the good had been used, it would require lots of proof by everyone about which particular input was used and which particular good exported to the United States. And that's a tradeoff about getting the most accurate margins versus the amount of proof required to achieve those margins. So Commerce has for now at least drawn the line as suitable for use. And we're content with that on this appeal. And is that also because goods are recognizing that goods are fungible? So if two different products, two different things are capable of using it, there's some fungibility allowed within that? So I don't think fungibility should really play a role here at all because, again, the question isn't about fungible goods but about the prices and the comparison of price in the U.S. and the foreign good. And if the foreign material is not being used to make the foreign good, the foreign ingredient is not being used to make the foreign good, then it's not really equivalent. It's essentially a tax loophole in the Turkish system that's been used. But you just said it doesn't have to be used. It just has to be capable of use. That's right, under this test. But under the facts of this case, we know it's – I mean, if it's not capable of use, then, of course, it's not been used. And so in this case where we have not even that it wasn't used but that it's incapable of being used, that makes it a really easy test to administer when you have that fact. And then you – and if that's the case, then you avoid the price skewed – the skewed price comparison that you would get if you were to allow a duty drawback adjustment here. Thank you. Thank you. Your Honor, David Simon again. I want to try to clear something up. In a huge number of cases, in every drawback case, the court and the agency have both agreed that it is not necessary to link imports and exports to have the drawback adjustment. You do not have to show any actual use. This is longstanding. It goes back 40 years. The Commerce Department – There's a resumption of use. Is that what it is? Because the customs can't implement it instead. So we're going to assume that it was used? Right. They operate entirely on the substitution drawback concept. It has always been this way. You cannot have a drawback system that doesn't work, and Commerce acknowledges that. But you're not saying that this circumstance, the specific factual circumstance here, is one that arises all the time? No, I'm not. That's right. Okay. Just to clarify, you're not saying that drawbacks have been based on something that could not be used in the ultimate product? I'm saying we don't know one way or the other. That has never been a test. The test has always been, is the foreign government substitution system okay? Or is it okay to allow substitutability on an eight-digit HTS basis? That's always been the issue. This time, and Commerce doesn't say anything different in this case, except they make a new test, a threshold test, that they have never done before, that we have to prove for each export to the United States that we imported raw material capable of being used for that product. Capable of. Not necessarily that we used it. We didn't have to buy that J55 coil and put it in that pipe. We just had to buy some J55 coil and export OCTG. This is the new test that they're applying now. And it's extremely dangerous because it writes out, it completely writes out of the drawback analysis, the entire concept of substitution. My next case will be, I presume, something that is in which we had more than three lines of data in our drawback application and database before Commerce, before the Turkish government. In that case, I'm going to have to show that for pipes of 18 different specifications, I had 36 different specifications of coil, each of them in enough quantity to make all of those pipes. Because once you throw out substitution drawback, you're then having to link the actual grade of the input with the actual grade of the products exported. Even if you don't have to show they were used, you would have to show that they are capable of being used. And once you go down that path, you have no more substitution drawback system. And it's just an unworkable exercise at that point. Here, this is an easy case, in a way. I understand the intuitive appeal of this case. But I urge you not to be taken in by that, because the substitution drawback was real. Eugel really got a drawback of duties on coils when it exported that pipe. Thank you very much.